UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**MARK POLITE**,                                              :
                                                              :
                Petitioner,             :
                                                              :   **MEMORANDUM DECISION AND**
       – against –                                      :   **ORDER**
                                                              :
                                                              :   19-CV-7073 (AMD) (LB)
**NUNZIO DOLDO**,                                             :
                                                              :
                Respondent.             :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* petitioner, who was released on parole on November 1, 2020 after serving more than twenty years in prison, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] The petitioner was convicted after a jury trial of Attempted Murder in the Second Degree for shooting Tyrone Bowman. N.Y. Penal Law §§ 110.00/125.25[1]. On October 18, 1999, the court sentenced the petitioner as a persistent felony offender to an indeterminate prison term of 20 years to life.[2] On May 12, 2011, the court granted the petitioner's motion for resentencing based on the petitioner's claim that the court improperly adjudicated him a persistent felony offender. The court held a hearing, after which it concluded that the petitioner was a persistent

---

[1] Although the petitioner has been released from prison, he satisfies the provision of 28 U.S.C. § 2254(a) requiring that he be "in custody" at the time he filed his petition. Moreover, because the petitioner is challenging his conviction and sentence, his petition is not mooted by his release from custody. *McCray v. New York*, 573 F. App'x 22, 23 n.1 (2d Cir. 2014). The petitioner also appears to be on parole, which itself satisfies the custody requirement. *See Jones v. Cunningham*, 371 U.S. 236 (1963).

[2] Unlike New York's second felony offender statute, which requires courts to impose an enhanced sentence, courts retain discretion to impose enhanced sentences under New York's persistent felony offender statute. *Sailor v. Scully*, 836 F.2d 118, 121 (2d Cir. 1987) ("even where the findings required for sentencing as a persistent felony offender have been made, the court retains discretion whether to impose the enhanced sentence authorized for a persistent felony offender").

felony offender and resentenced the petitioner to an indeterminate prison term of 20 years to life. The petitioner moves to vacate his sentence and dismiss his indictment. For the reasons explained below, the petition is denied.

## FACTUAL BACKGROUND[3]

### I. Conviction

On March 21, 1999, the petitioner shot and severely injured Tyrone Bowman near 1164 Halsey Street in Brooklyn. *People v. Polite*, No. 2771/99, 2011 WL 3235989, at *1 (N.Y. Sup. Ct. 2018) ("*Polite V*"). Shortly after the shooting, Bowman told a detective that "Mark Polite" shot him. (*Id.*) The petitioner was arrested and tried in New York Supreme Court, Kings County. (*Id.*) Eyewitnesses testified about the circumstances of the shooting but did not identify the petitioner as the shooter. (*Id.*) The jury found the petitioner guilty of attempted murder in the second degree, and on October 18, 1999, the court sentenced the defendant as a persistent felony offender to twenty years to life in prison. (*Id.*)

### II. Post-Conviction Procedural History

In February 2001, the petitioner, represented by counsel, appealed his conviction to the Appellate Division, Second Department. (*Id.*) The petitioner argued that the court excluded him from a side bar conference about the cross-examination of a defense witness, and that the court should have re-opened cross-examination of the victim. (*Id.*) In July 2001, the petitioner filed a *pro se* brief arguing the court should have excluded evidence of a photographic array, and that his trial lawyer was ineffective. (*Id.*)

---

[3] Because the petitioner was convicted at trial, the Court considers the evidence in the light most favorable to the prosecution. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.").

On February 19, 2002, the Appellate Division affirmed the petitioner's conviction. *People v. Polite*, 291 A.D.2d 511 (2d Dep't 2002) ("*Polite I*"). The New York Court of Appeals subsequently denied his application for leave to appeal. *People v. Polite*, 98 N.Y.2d 679 (2002) ("*Polite II*").

On May 9, 2003, the plaintiff filed a *pro se* habeas corpus petition in this district. *Polite v. Duncan*, No. 03-CV-2405. He raised the same claims he raised in state court. (03-CV-2405, ECF No. 1-3 at 5-25.) Judge Allyne Ross denied the petition on April 13, 2004, and the Second Circuit denied the petitioner's request for a certificate of appealability. (03-CV-2405, ECF Nos. 10, 15.)

On December 4, 2008, the petitioner moved *pro se* to vacate his conviction pursuant to CPL § 440.10. *People v. Polite*, No. 2771/99, 2009 WL 2481812, at *1 (Sup. Ct. Aug. 04, 2009) ("*Polite III*"). Citing Tyrone Bowman's 2003 federal conviction for conspiring to distribute a controlled substance, the petitioner argued that Bowman perjured himself at the petitioner's trial, with the prosecutor's knowledge, when he testified that he no longer dealt drugs. (*Id.*)[4] The prosecutor responded that she took reasonable steps to determine whether Bowman was still selling drugs at the time of the trial and had no knowledge that he was dealing. (*Id.*) The trial court denied the motion on April 4, 2009, observing that it was not clear that Bowman was selling drugs at the time of the petitioner's trial, since the federal indictment covered criminal conduct dating back to 1995. (*Id.*) In any event, the court found there was no evidence that the prosecutor knew that Bowman was selling drugs, or that it would have affected the outcome of

---

[4] Bowman pled guilty to federal drug distribution conspiracy charges and was sentenced to twenty years in prison. (*Id.*)

3

the case.[5] (*Id.*) The Appellate Division denied the petitioner's application for leave to appeal and motion for re-argument. *Polite V*, 2011 WL 3235989, at *1.

On December 27, 2010, the petitioner brought a second *pro se* § 440.10 motion claiming ineffective assistance of trial counsel, prosecutorial misconduct, and that the trial judge was biased. (*Id.*) In a July 14, 2011 order, the court denied this motion, finding that the petitioner had not established that his lawyer was ineffective, or that he had been prejudiced. (*Id.*) The court also determined that the remainder of the petitioner's claims were procedurally barred. (*Id.*)[6]

On December 15, 2010, the petitioner, represented by appellate counsel, moved pursuant to CPL § 440.20 to set aside his sentence as a persistent felony offender. *People v. Polite*, No. 2771/99, 2011 WL 1991976, at *1 (Sup. Ct. May 12, 2011) ("*Polite IV*"). The petitioner argued the court did not follow CPL § 400.20 in sentencing him as a persistent felony offender. (*Id.*) The prosecution conceded that the persistent felony offender adjudication was flawed, but argued that there was "substantial compliance" with CPL § 400.20. (*Id.*) On May 12, 2011, the court granted the petitioner's motion for a new sentencing hearing. (*Id.*)

### III.  Resentencing Hearing

At the hearing, which took place on September 15 and November 2, 2011, the prosecutor introduced the petitioner's criminal record, including certificates of conviction for Kings County Indictment Numbers 178/79, 2489/79 and 4223/87. (Transcript of Sept. 15, 2011 Resentencing Hearing 2:1-18, ECF No. 6-1 ("Sept. 15 Hr'g Tr.")) In 1979, the petitioner pled guilty to attempted robbery and manslaughter, and later in 1987, to possession of a controlled substance.

---

[5] The court dismissed the petitioner's other claims because they were based on the record, and thus barred by CPL § 440.10(2)(c). (*Id.*)
[6] The petitioner does not appear to have sought leave to appeal this denial of his second vacatur motion.

4

(*Id.* at 15: 14-18.)  In addition, the prosecution introduced the petitioner's rap sheet, documents from the Department of Corrections and Community Supervision stating that the petitioner had not been granted clemency in prior cases, fingerprint identification cards, and a certificate from the acting superintendent of the Orleans Correctional Facility, setting forth the periods during which the petitioner was incarcerated under various names, including "Mark Bogle," "Mark Boegel" and "Mark Polite."  (*Id.* at 5:13-15:7.)

Counsel objected to the minutes from the 1987 plea because they referred only to "Mark Polite," whereas the indictment and sentence minutes were under the name "Mark Bogle."  (*Id.* at 15:9-16:16.)  The court overruled the objection, observing other documents in evidence made it clear that the petitioner had used the names "Mark Polite" and "Mark Bogle" in the past.  (*Id.* at 19:22-21:24.)

The petitioner also "contested" the 1987 plea minutes, and testified at length, but never actually denied that he pled guilty in 1987.  (*Id.* at 24:3-8; 29:4-30:12.)  Instead, he argued that the prosecutor had to prove that "Mark Bogle" and not "Mark Polite" pled guilty in 1987.  (*Id.* at 36:8-25.)  Defense counsel pointed out that the were no fingerprint comparison records to confirm that the petitioner was the person convicted in 1987.  (*Id.* at 25:5-24.)  Defense counsel also introduced the record of the petitioner's prison infractions.  (*Id.* at 38:23-39:18.)

On November 2, 2011, the prosecutor introduced a certified fingerprint comparison report into evidence.  (*Id.* at 8:24-9:4; 33:4-22.)  At that point, counsel asked to be relieved, because of the "impossible" relationship with the petitioner.  (*Id.* at 11:19-20.)  The petitioner did not "trust, not just me, doesn't trust our office," and did not "believe that we are doing the best

5

for him." (*Id.* at 10:21-25.) The petitioner also accused his lawyer of sabotaging and undercutting his case. (*Id.* at 11:1-14.) The court denied the request. (*Id.* at 12:11-25.)[7]

Counsel then explained that the court reporter from the 1987 plea hearing told him that she originally identified the petitioner as "Mark Bogle," but used "Mark Polite" for the official copy because that name appeared elsewhere in the record. (*Id.* at 21:2-14.) The reporter prepared a corrected copy of the plea minutes. (*Id.* at 22:5-6.) The petitioner accused counsel of disloyalty for speaking with the court reporter, and counsel asked again to be relieved. (*Id.* at 22:7-20.) The court denied the application: "[t]he simple fact that he was industrious is not a basis to relieve him." (*Id.* at 23:16-19.) Counsel also noted the petitioner's objection that he was entitled to have a jury decide whether he was a persistent felony offender. (*Id.* at 36:2-20.)

After recounting the petitioner's prior crimes, the prosecution argued that the court should sentence the petitioner as a persistent felony offender. (*Id.* at 55:1-56:2.) Defense counsel responded that the court could impose 25-year sentence without adjudicating him a persistent felony offender, and that a longer sentence would discourage the petitioner from reforming his life. (*Id.* at 60:1-23; 64:19-20.) Defense counsel also noted that the petitioner's prison infractions were minor. (*Id.* at 62:4-21.)

The court found that the fingerprint comparison certificate confirmed that the petitioner was convicted in all three cases. (*Id.* at 71:19-24.) The court also noted that the New York Court of Appeals had found that the persistent felony offender statute was constitutional. (*Id.* at 74:11-14.) Finally, the court concluded that the petitioner's record warranted a persistent felony

---

[7] In addition, counsel argued that his colleague, who handled the petitioner's direct appeal, should have raised the persistent felony offender issue sooner, which would have allowed the petitioner to call a character witness with whom he had since lost contact. (*Id.* at 15:10-25.)

offender sentence. The court sentenced the petitioner to an indeterminate prison term of 20 years to life. (*Id.* at 74:23-25.)

### IV.     Post-Resentencing Proceedings

On July 10, 2014, the petitioner moved *pro se* to set aside the sentence pursuant to CPL § 440.20, and to vacate his conviction pursuant to CPL § 440.10. (ECF No. 6-1 at 142 ("SR").) The petitioner argued that his conviction should be vacated pursuant to CPL § 380.30(1) and the indictment dismissed pursuant to CPL § 440.10 because of the delay between the verdict and the resentencing. (*Id.* at 163-164.) The petitioner claimed that the delay prevented him from calling a character witness, and that he would not have had a prison disciplinary record if he had been correctly sentenced in 1999. (*Id.* at 170.) Finally, the defendant claimed the transcripts of his resentencing hearing were inaccurate. (*Id.* at 173.) On October 23, 2015, the court denied the petitioner's motions, concluding that the unreasonable delay claim was procedurally barred and meritless, and that the petitioner would have been adjudicated a persistent felony offender even without his disciplinary record. (*Id.* at 248-250.)

In August 2016, the petitioner, represented by counsel, appealed the 2011 sentence. (*Id.* at 253.) The petitioner argued that New York's persistent felony offender statute was unconstitutional, that he was prejudiced by the delay between his initial sentencing and resentencing, and that the trial court deprived him of his constitutional right to counsel by denying his mid-hearing request for new counsel. (*Id.* at 254-55.) The petitioner also filed a *pro se* supplemental brief repeating the claims that appellate counsel raised. (*Id.* at 290-91.) On September 19, 2018, the Appellate Division affirmed the resentencing. *People v. Polite*, 164 A.D.3d 1372, 1372 (2d Dep't 2018) ("*Polite VI*"). The appellate court noted that the Court of Appeals had repeatedly rejected constitutional challenges to New York's persistent felony

offender statute and concluded that the trial court did not abuse its discretion or violate the petitioner's constitutional rights by denying his request for new counsel. *Id.* at 1373-75. The court also rejected the petitioner's jurisdictional claim as unpreserved for appellate review. *Id.* On December 18, 2018, the New York Court of Appeals denied the petitioner's application for leave to appeal. *People v. Polite*, 32 N.Y.3d 1127 (2018). On December 16, 2019, the petitioner filed this petition. (ECF No. 1 at 1.)

The petitioner argues: (1) that the persistent felony offender adjudication should have been made by a jury with a reasonable doubt standard; (2) the court should have assigned new counsel at the resentencing hearing; (3) the unreasonable delay in his resentencing violated CPL § 380.30; (4) he was prejudiced by the delay between the first sentencing and the resentencing; (5) his appellate lawyer was ineffective; (6) the prosecution did not provide him with accurate transcripts of his 2011 resentencing hearing, and; (7) the prosecution withheld transcripts. (*Id.* at 5-17.)

## LEGAL STANDARD

A federal court reviewing a habeas petition must not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine applies to substantive and procedural state law grounds. *Id*. at 729-30.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to defer to a state court's decision on the merits. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus unless the state court's decision on the merits was "contrary to, or involved an unreasonable application

8

of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Johnson v. Williams*, 568 U.S. 289, 292 (2013); *Chrysler v. Guiney*, 806 F.3d 104, 116-17 (2d Cir. 2015). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"When a state court" "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment," "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). For example, "a state court ruling simply that a claim is 'without merit' constitutes an adjudication on the merits of that claim." *Jimenez v. Walker*, 458 F.3d 130, 146 (2d Cir. 2006). In such a case, "the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Sellan*, 261 F.3d at 311-12.

For the purposes of federal habeas review, "clearly established law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" or an "unreasonable application of" clearly established law if the decision: (1) is contrary to Supreme Court precedent on a question of law; (2) arrives at a conclusion different than that reached by the Supreme Court on "materially indistinguishable" facts; or (3) identifies the correct governing legal rule but unreasonably applies it to the facts of the petitioner's case. *Id*. at 412-13. The court reviews the last reasoned state court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). The state court's

factual determinations are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A petitioner can seek federal habeas corpus relief only after he exhausts his state court remedies and gives the state court a fair and full opportunity to review the merits of the claim. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In other words, a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)).

## DISCUSSION

### I. Constitutionality of New York's Persistent Felony Offender Statute (Claim 1)

Construed liberally, the petitioner's argument is that New York's persistent felony offender statute violates *Apprendi v. New Jersey*, in which the Supreme Court held that the prosecution must prove to a jury beyond a reasonable doubt any fact that increases the penalty for a crime above a prescribed statutory maximum, except for the existence of prior convictions. 530 U.S. 466, 490 (2000).

The Appellate Division's denial of the petitioner's challenge to the constitutionality of New York's persistent felony offender statute, New York Penal Law § 70.10, was not contrary to, or an unreasonable application of, Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(2). As the Appellate Division observed, the New York Court of Appeals has consistently rejected this argument and has found that the statute is constitutional. *People v. Prindle*, 29 N.Y.3d 463, 466 (2017) ("As we have consistently explained, the existence of those prior convictions—each the result of either a guilty plea or a jury verdict—is the 'sole determinant of whether a defendant

10

is subject to recidivist sentencing as a persistent felony offender'"); *Polite VI*, 164 A.D.3d at 1373-74.

Moreover, the Second Circuit rejected nearly identical constitutional challenges to the statute in *Portalatin v. Graham*, 624 F.3d 69, 93-94 (2d Cir. 2010) (en banc) ("In contrast, the [persistent felony offender] statute—as interpreted by the New York Court of Appeals—creates a recidivist sentencing scheme in which the only factual predicates necessary to impose the enhanced sentence relate to the defendant's criminal history."). Accordingly, the petitioner's *Apprendi* claim is denied.

## II.     Ineffective Assistance of Appellate Counsel (Claims 2 & 5)

The petitioner argues his appellate lawyer was ineffective at his resentencing hearing, and that the court deprived him of his constitutional right to counsel when it denied his request for a new lawyer. (ECF No. 1 at 7, 12.) According to the petitioner, counsel "repeatedly and intentionally took the side of the People." (*Id.*) The petitioner cites counsel's introduction of the petitioner's disciplinary records, and his investigation into the discrepancy between the names in the 1987 plea and sentencing transcripts. (*Id.*)

The Appellate Division rejected these arguments, finding that the trial court "repeatedly allowed the defendant, and defense counsel, to explain the reasons for the defendant's loss of confidence in counsel, and reasonably concluded that there was no genuine conflict of interest," and that "the transcript of the resentencing proceeding establishes that counsel continued to provide meaningful assistance to the defendant." *Polite VI*, 164 A.D.3d. at 1375 (internal citations omitted).

This determination was not an unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). *Strickland v. Washington* governs ineffective

11

assistance of counsel claims, 466 U.S. 668 (1984), including claims that appellate counsel was ineffective, *see Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). To prevail, a petitioner must establish: (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

The first prong requires the petitioner to establish that his counsel's performance was "so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting *Strickland*, 466 U.S. at 690). This test may be met by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

The second prong requires that the petitioner establish that his counsel's "deficient performance prejudiced the defense" such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. "A reasonable probability is one that is sufficient to undermine confidence in the outcome, which requires a substantial, not just conceivable, likelihood of a different result." *Jackson v. Conway*, 763 F.3d 115, 153 (2d Cir. 2014) (internal quotation marks and citation omitted).

As in all ineffective assistance of counsel claims, the court begins with "a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance;" a presumption that the petitioner bears the burden to overcome. *Strickland*, 466 U.S. at 689. Moreover, "[w]hen evaluating an ineffective assistance claim under § 2254(d), [the Court's]

12

review is 'doubly deferential'" because the deferential *Strickland* standard is applied "through the deferential lens of § 2254(d)." *Jackson v. Conway*, 763 F.3d 115, 153 (2d Cir. 2014).  In such a case, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011). The petitioner has not satisfied either *Strickland* prong.

      The petitioner has not established that counsel's representation at the resentencing hearing fell below an objective standard of reasonableness.  To the contrary, counsel represented the petitioner zealously.  Counsel introduced the petitioner's disciplinary records in order to show that the infractions were not serious.  (Nov. 2 Hr'g Tr. 62:4-21.)  Regardless, this strategic choice did not prejudice the petitioner, because the petitioner's disciplinary history was not a basis for the court's conclusion that the petitioner should be sentenced as a persistent felony offender.  (*Id.* at 74:1-25.)

      Equally meritless is the petitioner's complaint that counsel should not have investigated the name discrepancy in the 1987 plea and sentencing minutes.  Counsel cannot be faulted for trying to resolve the issue or for reporting the results of his investigation accurately.  *See Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009) ("However, 'the Sixth Amendment does not require that counsel do what is impossible or unethical.'") (quoting *United States v. Cronic*, 466 U.S. 648, 656 n.19 (1984); *see also Torres v. Donnelly*, 554 F.3d 322, 326 (2d Cir. 2009) ("Indeed, an attorney's ethical duty to advance the interests of his client is limited by an equally solemn duty to comply with the law and standards of professional conduct; it specifically ensures that the client may not use false evidence.") (internal quotation marks and citations omitted.)

In any event, the fingerprint comparison records and NYSID numbers established that the petitioner had three prior felony convictions. Thus, the petitioner has not established to a reasonable probability that the court would not have adjudicated him a persistent felony offender in the absence of counsel's investigation.

The petitioner also claims that counsel should not have objected to the absence of a fingerprint comparison report, because his objection prompted the prosecution to produce the record. (Sept. 15 Hr'g Tr. 25:5-24.) This claim is also meritless. *See Thomas v. Conway*, No. 07-CV-6311, 2010 WL 2330360, at *5 (W.D.N.Y. June 7, 2010) (counsel who "filed appropriate pre-trial motions, delivered an articulate opening statement that evidenced his familiarity with the case, made appropriate arguments and objections throughout the trial" not ineffective).

Next, the petitioner cites a breakdown in communication between him and counsel, (ECF No. 1 at 12,) but he does not explain how this prejudiced him. *See Myers v. Laclair*, No. 06-CV-13321, 2007 WL 3254902, at *6 (S.D.N.Y. Oct. 31, 2007) (Ineffective counsel claim dismissed where the petitioner alleged "a lack of a response to letters and calls," but "fail[ed] to demonstrate how different conduct might have changed the outcome."); *Soltero v. Kuhlman*, No. 99-CV-10765, 2000 WL 1781657, at *5 (S.D.N.Y. Dec. 4, 2000) (Ineffective counsel claim dismissed where the petitioner alleged that "counsel did not answer his questions, did not return his phone calls, urged him to plead guilty, declined to make bail applications, and failed to provide him with requested documents" but did not establish any prejudice).

Finally, the Appellate Division did not contravene clearly established Supreme Court precedent by rejecting the petitioner's claim that he was entitled to a new lawyer at the hearing. *Ward v. Capra*, No. 117-CV-0704, 2019 WL 2302351, at *6 (E.D.N.Y. May 30, 2019) ("The Supreme Court has not articulated a standard for deciding a Sixth Amendment claim based on a

habeas petitioner's allegation that the trial court denied his request for substitute counsel.") (internal quotation marks and citations omitted); *see also Wheat v. United States*, 486 U.S. 153, 159 (1988) ("Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.").

In short, appellate counsel's representation fell within the bounds of sound, professional representation. After successfully arguing for a new resentencing hearing, counsel made timely objections and held the prosecution to its burden of proof. (Sept. 15 Hr'g Tr. 16:6-16.) The record also reflects that counsel relayed the petitioner's arguments to the court, including his *Apprendi* claim, even though he knew it would likely be unsuccessful. (*Id.* at 36:2-20; 38:20-39:11.) Finally, counsel urged the court not to sentence the petitioner as a persistent felony offender. (*Id.* at 60:1-64-20.) While he did not succeed, that is not evidence of ineffective assistance. Indeed, it was the petitioner's record, which included prior convictions for manslaughter, attempted robbery and drug possession that led the court to conclude that he should be sentenced as a persistent felony offender.

### III.    Delay Between Sentencing and Resentencing (Claims 3 & 4)

The petitioner argues that he was prejudiced by the delay between sentencing and resentencing. (ECF No. 1 at 10.) He also argues that the delay violated CPL §§ 380.30(1) & (2), and that the trial had no jurisdiction over his case. (*Id.* at 8.) As explained below, these arguments are not cognizable upon federal habeas review.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding

15

whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (same). CPL § 380.30 provides that "[s]entence must be pronounced without unreasonable delay." Courts in this Circuit confronted with similar habeas challenges have held that the "right to speedy resentencing [enshrined by CPL § 380.30] is a creation of New York, rather than federal law" that does not warrant habeas relief. *Robinson v. Miller*, No. 19-CV-0696, 2023 WL 2815300, at *7 (N.D.N.Y. Jan. 25, 2023), *report and recommendation adopted*, No. 19-CV-0696, 2023 WL 2810147 (N.D.N.Y. Apr. 6, 2023); *Diggs v. Griffin*, No. 13-CV-6228, 2014 WL 1117844, at *5 (W.D.N.Y. Mar. 19, 2014) ("Petitioner here has failed to allege how the delay in his resentencing proceeding violated federal constitutional law. Accordingly, this claim cannot provide a basis for habeas relief under 28 U.S.C. § 2254."); *Thomas v. Heath*, No. 10-CV-5861, 2011 WL 1849097, at *7 (S.D.N.Y. May 16, 2011), *report and recommendation adopted*, No. 10-CV-5861, 2011 WL 2671300 (S.D.N.Y. July 6, 2011) (rejecting a CPL § 380.30 habeas challenge because it did not implicate federal law).

Courts in other circuits have rejected similar claims. *Bibbs v. Bunting*, No. 16-CV-02069, 2017 WL 4083558, at *14 (N.D. Ohio May 17, 2017), *report and recommendation adopted*, No. 16-CV-2069, 2017 WL 4077163 (N.D. Ohio Sept. 14, 2017) ("the Supreme Court has never extended a speedy trial analysis to resentencing once the conviction is definitive") (citing *United States v. Sanders*, 452 F.3d 572, 577-579 (6th Cir. 2006)); *U. S. ex rel. Ford v. Yeager*, 287 F. Supp. 347, 350 (D.N.J. 1968) (delay of 13 years before the resentencing of a habeas petitioner who had previously been sentenced as a habitual offender but whose habitual offender status was later vacated was not a speedy trial violation that warranted habeas relief).

Accordingly, the petitioner's claims for habeas relief based on delay between the first sentencing and resentencing are denied. [8]

### I. Prosecutorial Misconduct (Claims 6 & 7)

The petitioner argues that the prosecutor deliberately withheld minutes from his resentencing hearing in 2011, which prejudiced him on direct appeal of his resentence. (ECF No. 1 at 13-17.) According to the petitioner, the prosecution did not provide him with minutes of court proceedings from July 27, 2011 and September 20, 2011 in violation of a court order. (*Id.* at 13.) The petitioner alleges that these missing minutes substantiate his ineffective assistance of counsel claims, and demonstrate that he raised his CPL § 380.30 argument before the trial court. (*Id.* at 14-15.) A habeas petitioner advancing a prosecutorial misconduct claim must prove that prosecutor's actions "were so prejudicial that they rendered the trial . . . fundamentally unfair." *Fox v. Mann*, 71 F.3d 66, 72 (2d Cir.1995).

The petitioner concedes that he did not raise these claims in state court, but points out that he only recently learned about the missing minutes. (ECF No. 1 at 20.) However, before a petitioner can seek federal habeas corpus relief, he must exhaust the remedies available in the

---

[8] The respondent argues that this Court cannot consider the petitioner's resentencing delay claims. (ECF No. 6 at 45.) When the petitioner raised these claims on direct appeal, the Appellate Division held that they were unpreserved for appellate review pursuant to CPL § 470.05 because the petitioner did not raise them before the trial court. *Polite VI*, 164 A.D.3d at 1375. Federal courts are precluded from "review[ing] questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citation omitted)). Since these claims do not implicate federal law, the Court need not consider whether they are procedurally barred. In any event, while the petitioner did not invoke CPL § 380.30 at the resentencing hearing, he did argue that he had been prejudiced by the delay between his initial sentencing and resentencing. (Nov. 2 Hr'g Tr. 15:19-14; 49:8-15). Moreover, the trial court addressed the petitioner's CPL § 380.30 argument explicitly when it denied his CPL § 440 motion, concluding that "Defendant has not cited, nor did this court's own research reveal, a case which holds that CPL § 380.30(1) applies to a resentencing procedure when the defendant was initially sentenced in a timely manner, and the resentence was likewise imposed in a timely manner." (SR at 249.)

17

state court by giving the state courts a fair and full opportunity to review the merits of the claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (citing 28 U.S.C. § 2254(b)(1)).  "A habeas court may, however, deny on the merits a habeas petition containing unexhausted claims if those claims are 'plainly meritless.'" *Velez v. Ercole*, No. 06-CV-334, 2006 WL 2742046, at *4 (S.D.N.Y. Sept. 26, 2006) (internal quotation marks and citations omitted); *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (affirming district court dismissal of plainly meritless unexhausted ineffective assistance of counsel claim); *Williams v. Artus*, 691 F. Supp. 2d 515, 526 (S.D.N.Y. 2010) (citing 28 U.S.C. § 2254(b)(2)) ("Even if, however, a claim is unexhausted, 28 U.S.C. § 2254(b)(2) provides that '[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'").

The record demonstrates the petitioner's prosecutorial misconduct claims are baseless, and that he was not prejudiced.  There were no proceedings on September 20, 2011.  As counsel explained to the petitioner in a letter, the resentencing hearing scheduled for that day was adjourned because the judge was not available.  (SR at 189.)  Nor did anything of substance occur on July 27, 2011.  His lawyer did not, as the petitioner claims, ask for a certified fingerprint record, nor did the petitioner raise his CPL § 380.30 claim.  The transcript of the July 27, 2011 proceedings reflects that the court addressed scheduling and other administrative matters.  (*Id.*)  Accordingly, the petitioner's prosecutorial misconduct claims are denied as well. *Razzoli v. Exec. Off. U.S. Marshals*, No. 10-CV-4802, 2011 WL 2610385, at *2 (E.D.N.Y. June 30, 2011) (Under Rule 4 of the Habeas Rules, a district court may summarily dismiss a petition where the allegations contained therein are 'patently frivolous or false, or vague or conclusory or palpably incredible.'") (quoting *Dory v. Comm'r of Corr.*, 865 F.2d 44, 45 (2d Cir. 1989));

18

*Cooper v. Bellnier*, No. 09-CV-2353, 2010 WL 8551300, at *15 (E.D.N.Y. Mar. 31, 2010), *report and recommendation adopted*, No. 09-CV-2353, 2012 WL 1237647 (E.D.N.Y. Apr. 12, 2012) (dismissing a 28 U.S.C. § 2254 habeas petitioner's allegations of witness tampering by the prosecution because they were unsupported by the record).

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus is denied in its entirety. The case is dismissed. A certificate of appealability will not be issued. *See* 28 U.S.C. § 2553(c).

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
       May 16, 2023